UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS
EASTERN DIVISION

_____
                               )
In re:                        )
                               )
SALEH AL YOUSSEF,       )     Chapter 7
                            )     Case No. 19-12420-JEB
                               )
              Debtor.   )
_____)
                               )
WILLIAM K. HARRINGTON,  )
UNITED STATES TRUSTEE,   )
REGION ONE,            )
                               )
             Plaintiff.  )     Adversary No.    _____
v.                         )
                               )
SALEH AL YOUSSEF,       )
                               )
            Defendant.  )
_____)

**UNITED STATES TRUSTEE'S COMPLAINT
OBJECTING TO DISCHARGE
<u>OF SALEH AL YOUSSEF</u>**

**SUMMARY**

By this proceeding, William K. Harrington, United States Trustee for Region

One, objects to the discharge of Saleh Al Youssef ("Defendant" or "Debtor"), the

individual chapter 7 debtor in the above case:

- under 11 U.S.C. § 727(a)(2), because the Defendant, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under title 11, removed, transferred or concealed property of the

-1-

Debtor, within one year before the date of the filing of the petition, or property of the estate, after the date of the filing of the petition;

- under 11 U.S.C. § 727(a)(4)(A), because the Defendant knowingly and fraudulently or with reckless disregard to the truth in connection with his case, made a material false oath or account;

- under 11 U.S.C. § 727(a)(3), because the Defendant has concealed, destroyed, mutilated, falsified or failed to keep or preserve recorded information including books, documents, records, and papers, from which the Defendant's financial condition or business transactions might be ascertained; and

- under 11 U.S.C. § 727(a)(5), because the Defendant has failed to explain satisfactorily loss of assets or deficiency of assets to meet his liabilities.

## PARTIES

1.      The plaintiff, William K. Harrington, United States Trustee for Region One (the "Plaintiff" or "United States Trustee") has a usual place of business at the John P. McCormack Post Office and Courthouse, 5 Post Office Square, Suite 1000, Boston, Massachusetts 02109.

2.      The Defendant, Mr. Saleh Al Youssef, is an individual who listed his address as 126 Pleasant Street, Norwood, Massachusetts 02062 on his voluntary Chapter 7 petition ("Petition") for relief under title 11 of the United States Code in the United States Bankruptcy Court for the District of Massachusetts, Eastern Division ("Court") (Docket Nos. 1 and 7).[1]

## JURISDICTION AND VENUE

---

[1] All docket references are to the underlying Chapter 7 case no. 19-12420-JEB.

3.      The Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157(j) and 1334(a) and (b) and 11 U.S.C. § 727(a), because it arises under title 11 of the United States Code or arises in or is related to the above-captioned bankruptcy case under title 11 of the United States Code.

4.      This adversary proceeding is a "core" proceeding pursuant to 28 U.S.C. § 157(b)(2)(J).

5.      Venue is proper in this Court pursuant to 28 U.S.C. § 1409(a).

## STANDING AND TIMELINESS OF COMPLAINT

6.      The Bankruptcy Code at 11 U.S.C. § 727(c)(1) authorizes the United States Trustee to object to the granting of an individual Chapter 7 debtor's discharge.  *See also* 28 U.S.C. § 586, 11 U.S.C. § 307, Fed. R. Bankr. P. 7001 and 7009.

7.      By Order dated March 2, 2021, the Court extended the United States Trustee's deadline for objecting to the Defendant's discharge to May 7, 2021.  *See* Fed. R. Bankr. P. 4004(a) and Docket Nos. 69 and 70.

8.      This complaint is therefore timely.  *See* Fed. R. Bankr. P. 4004(b)(1) and MLBR 9006-1.

## STATEMENT PURSUANT TO RULE 7008

9.      Pursuant to Fed. R. Bankr. P. 7008, the United States Trustee states that he consents to entry of final orders and/or judgment by the Court.

## STATEMENT OF FACTS
## COMMON TO ALL COUNTS

10.     The Plaintiff re-alleges and incorporates by reference herein all of the

preceding paragraphs of this Complaint.

**A.    The Defendant filed bankruptcy documents including his voluntary Chapter 7 Petition, Schedules, Statement of Financial Affairs, Form 22, and Declaration then testified at his first meeting of creditors, under penalty of perjury.**

11.     On July 17, 2019 ("Petition Date"), the Defendant, through his then

counsel, George Piandes, Esq. ("Attorney Piandes"), filed the Petition commencing

Case No. 19-12420-JEB.[2] (Docket Nos. 1 and 7).

12.     The Defendant's Petition states that "I have examined this petition,

and I declare under penalty of perjury that the information provided is true and

correct."  The Petition states further that "I understand making a false statement,

concealing property, or obtaining money or property by fraud in connection with a

bankruptcy case can result in fines up to $250,000, or imprisonment for up to 20

years, or both."  The Petition bears the signature of the Defendant and is dated July

17, 2019. (Docket No. 7 at page 6 of 7).

13.     The Defendant, at Question 4 on the Petition, had an obligation to

disclose "[a]ny business names and Employer Identification Numbers (EIN) you

---

[2]  On December 11, 2020, Attorney James P. Ehrhard filed a notice of appearance. As of the date of this Complaint, Attorney Ehrhard has not filed a disclosure of compensation of attorney for Debtor as required by 11 U.S.C. § 329 and Fed. R. Bankr. P. 2016(b).

have used in the last 8 years," including trade names and "doing business as"

names.  In response, the Defendant answered "I have not used any business name

or EINs." (Docket No. 7 at page 2 of 7).

14.    The Defendant, at Question 12 of the Petition, had an obligation to

disclose whether he is "a sole proprietor of any full- or part-time business."  The

Defendant answered "no" in response.  Id. at page 4 of 7.

15.    Question 16 of the Petition asked the Defendant whether his debts are

primarily consumer debts.  The Defendant answered "yes" in response.  Id. at page

6 of 7.

16.    On July 17, 2019, the Defendant filed his Schedules of Assets and

Liabilities ("Schedules") and Statement of Financial Affairs ("SOFA") (Docket

No. 1).  The Defendant filed his Chapter 7 Statement of Your Current Monthly

Income on the Petition Date ("Form 22"). (Docket No. 6).

17.    On July 17, 2019, the Defendant further filed his certificate of

counseling, which states that he received credit counseling on June 1, 2019.

(Docket No. 5).

18.    On July 17, 2019, the Defendant also filed a Declaration Re:

Electronic Filing which states "[u]nder penalty of perjury, I declare that I have read

the summary and schedules filed with this declaration and that they are true and

correct" ("Declaration").  The Declaration bears the signature of the Defendant and is dated July 17, 2019. (Docket No. 3).

19.    Likewise, the Defendant's Form 22 states "I declare under penalty of perjury that the information on this statement and in any attachment is true and correct."  The Form 22 is dated July 17, 2019 and bears the electronic signature of the Defendant. (Docket No. 6).

20.    Likewise, the Defendant's SOFA states that "I have read the answers on this *Statement of Financial Affairs* and any attachments, and I declare under penalty of perjury that the answers are true and correct.  I understand that making a false statement, concealing property, or obtaining money or property by fraud in connection with a bankruptcy case can result in fines up to $250,000, or imprisonment for up to 20 years, or both."  The SOFA is dated July 17, 2019 and bears the electronic signature of the Defendant. (Docket No. 1 at page 42 of 52).

21.    Likewise, the Defendant's Schedules state that "[m]aking a false statement, concealing property, or obtaining money or property by fraud in connection with a bankruptcy case can result in fines up to $250,000, or imprisonment for up to 20 years, or both…. Under penalty of perjury, I declare that I have read the summary and schedules filed with this declaration and that they are true and correct."  The Schedules are dated July 17, 2019 and bear the electronic signature of the Defendant.  Id.

22.     The Defendant's Schedules report personal property valued at $2,120 including, but not limited to, the following: household goods & furnishings ($1,500); clothes ($500); and jewelry ($100). (Docket No. 1 at Schedule A/B).

23.     The Defendant, in response to Schedule A/B Question 3, had an obligation to disclose whether he owns, leases, or has any legal or equitable interest in any vehicles, whether they are registered or not.  The Defendant answered "no."  Id.

24.     The Defendant, at Schedule A/B Question 7, had an obligation to disclose whether he owns or has any legal or equitable interest in "[e]lectronics." The Defendant answered "no."  Id.

25.     The Defendant, in response to Question 14, had an obligation to disclose whether he owns or has any legal or equitable interest in "[a]ny other personal or household items you did not already list."  The Defendant answered "no."  Id.

26.     The Defendant, in response to Question 16, is obligated to disclose whether he owns or has any legal or equitable interest in "[c]ash."  The Defendant answered "$20."  Id.

27.     The Defendant, in response to Question 17, is obligated to disclose whether he owns or has any legal or equitable interest in "[d]eposits of money." The Defendant answered "no."  Id.

28.     The Defendant, in response to Question 19, is obligated to disclose whether he owns or has any legal or equitable interest in "[n]on-publicly traded stock and interests in incorporated and unincorporated businesses."  The Defendant answered "no."  Id.

29.     The Defendant, in response to Question 28, is obligated to disclose whether he owns or has any legal or equitable interest in "[t]ax refunds owed to you."  The Defendant answered "no."  Id.

30.     The Defendant, in response to Question 35, is obligated to disclose whether he owns or has any legal or equitable interest in "[a]ny financial assets you did not already list."  The Defendant answered "no."  Id.

31.     The Defendant, in response to Question 37, is obligated to disclose whether he owns or has any legal or equitable interest in "[a]ny business-related property."  The Defendant answered "no."  Id.  As a result of the Defendant's answer to Question 37, he did not answer Question 44 which obligated the Defendant to disclose "any business related property you did not already list."

32.     The Defendant, in response to Question 53, is obligated to "[d]escribe other property of any kind that you did not already list."  The Defendant answered "no."  Id.

33.     On his Schedule E/F, the Debtor listed non-priority unsecured debts totaling $134,610. Id.

-8-

34.     On his Schedule I, the Defendant reported that he has been self-employed for 7 months as a driver.  The Defendant further reported that his non-debtor spouse, Denise Samaha ("Denise"), has been employed for 3 years as a make-up artist with CoWorx Staffing Services LLC. Id.

35.     The Defendant further listed gross wages for Denise of $475 monthly. The Defendant listed his net income from operation of a business at $4,672.  The combined net income is listed at $5,064 monthly or $60,766 when annualized.  The Defendant listed no other monthly income. Id.

36.     On his Schedule J, the Defendant listed monthly expenses of $5,055, including installment payments or other payments of "0."  Id.

37.     On his Form 22, the Defendant listed gross wages for Denise of $475 monthly.  The Defendant listed his income from operation of a business as follows: gross receipts $6,027.90 – ordinary and necessary operating expenses of $1,355.78 = $4,672.12 monthly.  The total current monthly income is listed at $5,147.  The total current monthly income for the year is listed at $61,765 for a household size of 4.  The Defendant listed no income from operation of a business for Denise. The Defendant listed no income from all other source(s) for the Defendant or Denise. (Docket No. 6 at pages 1-2).

38.     The Defendant, in response to SOFA Question 4, is obligated to disclose "any income from employment or from operating a business during this

year or the two previous calendar years." The Defendant stated that he received

gross income of $30,368 from January 1, 2019 to July 17, 2019, the date he filed

for bankruptcy relief. He reported that this gross income was derived from

operating a business. He did not disclose any income from wages, commissions,

bonuses, tips. The Defendant further stated that Debtor 2 received gross income of

$1,946 from January 1, 2019 to the Petition Date. He reported that this gross

income was derived from wages, commissions, bonuses, tips. He did not disclose

any income for Debtor 2 from operating a business. (Docket No. 1 at page 36 of

52).

      39.    For calendar year 2018, the Defendant reported gross income in the

amount of $7,230 from operating a business. He did not disclose any income from

wages, commissions, bonuses, tips. The Defendant further stated that Debtor 2

received gross income of $6,411 from wages, commissions, bonuses, or tips. He

did not disclose any income for Debtor 2 from operating a business. Id.

      40.    For 2017, the Defendant reported gross income of $15,240 from

operating a business. He further stated that Debtor 2 received gross income of

$24,636 from wages, commissions, bonuses, or tips. Id.

      41.    The Defendant, in response to SOFA Question 5, is obligated to

disclose "any other income in this year or the two previous calendar years." The

Defendant did not disclose the receipt of any other income during 2019, 2018, or

2017. Apart from the gross income disclosed in response to SOFA Question 4, the Defendant expressly stated that he did not receive any other gross income in 2019, 2018, or 2017. <u>Id.</u>

42.    The Defendant, in response to SOFA Question 6, is obligated to disclose "[d]uring the 90 days before you filed for bankruptcy, did you pay any creditor a total of $600 or more." The Defendant answered "Landlord, last 3 months rent, $7,500, rent." <u>Id.</u>

43.    The Defendant, in response to SOFA Question 8, is obligated to disclose "[w]ithin 1 year before you filed bankruptcy, did you make any payments or transfer any property on account of a debt that benefited an insider." The Defendant answered "no." <u>Id.</u>

44.    The Defendant, in response to SOFA Question 9, is obligated to disclose "[w]ithin one year before you filed for bankruptcy, were you a party to any lawsuit, court action, or administrative proceeding." The Defendant answered "no." <u>Id.</u>

45.    The Defendant, in response to SOFA Question 13, is obligated to disclose "[w]ithin 2 years before you filed for bankruptcy, did you give any gifts with a total value of more than $600 per person." The Defendant answered "no." <u>Id.</u>

46.     In response to SOFA Question 16, the Defendant reported his payment to "Hines Law Offices [Attorney Piandes] of Attorney Fees on 6/11/2019 in the sum of $2,000." Id. and Docket No. 4.

47.     The Defendant, in response to SOFA Question 18, is obligated to disclose whether he sold, traded, or otherwise transferred any property to anyone within two years before the Petition Date, other than property transferred in the ordinary course of your business or financial affairs. The Defendant answered "no." (Docket No. 1 at page 39 of 52).

48.     The Defendant, in response to SOFA Question 20, is obligated to disclose "[w]ithin 1 year before you filed for bankruptcy, were any financial accounts or instruments held in your name, or for your benefit, closed, sold, moved, or transferred." The Defendant answered "no." Id.

49.     The Defendant, in response to SOFA Question 21, is obligated to disclose "[w]ithin 1 year before you filed for bankruptcy, any safe deposit box or other depository for securities, cash or other valuables." The Defendant answered "no." Id.

50.     The Defendant, in response to SOFA Question 23, is obligated to disclose "[d]o you hold or control any property that someone else owns." The Defendant answered "no." Id.

51.     The Defendant, in response to SOFA Question 27, is obligated to disclose "[w]ithin 4 years before you filed for bankruptcy, did you own a business or have any of the following connections to any business- a sole proprietorship or self-employed in a trade, profession, or other activity, either full time or part time, a member of a limited liability company or limited liability partnership, a partner in a partnership, an officer, director, or managing executive of a corporation, an owner of at least 5% of the voting or equity shares of a corporation."  The Defendant checked the box indicating "member of an LLC or LLP," and listed "Soloc, LLC, 626 Norwest Drive, Norwood, MA  02062, Driving Service, Shah, Dixit & Associates, EIN: 46-3776800, From-To 4/22/2013-6/30/2016."  The Defendant listed no other business(es) or connections to any business(es).  Id.

52.     Upon commencement of this case, the Plaintiff appointed John Aquino, Esq. as Chapter 7 trustee ("Trustee").  Trustee Aquino accepted his appointment.

53.     On August 13, 2019, the Defendant appeared with Attorney Piandes and was sworn at his first meeting of creditors in accordance with 11 U.S.C. § 341 ("341 Meeting").

54.     In response to questions at the 341 Meeting, the Defendant testified under oath:

a.     that he reviewed and signed all of the bankruptcy documents before they were filed and he answered all questions truthfully;

b.    the documents contain a true and accurate list of everything he owns;

c.    he has never owned any real estate;

d.    he owned a livery transportation business but it fell apart last year; and

e.    he had not sold or given away anything that he owned in the (1) one year before the Petition Date.

**B.    Mr. Al Youssef, Denise Samaha, and third parties produce documents in response to the United States Trustee's informal inquiries and Rule 2004 requests.  The Defendant testifies at Rule 2004 oral examination.**

55.    By order dated February 26, 2020, the Court granted the United States Trustee's motion for Rule 2004 examination (document production only) in Mr. Al Youssef's chapter 7 case. (Docket Nos. 28 and 42).

56.    The United States Trustee requested that the Defendant and Denise produce categories of documents including, but not limited to, bank account statements, cancelled checks, deposits and withdrawals (including supporting documents for all inflows and outflows) for all accounts in which they had an interest, access, or signatory power "for the period of January 1, 2017 to the present…," tax returns, business records, credit card statements, vehicle records, and a sworn statement." (Docket Nos. 29 and 42).

57.     The Court further granted the United States Trustee's motions for Rule 2004 examination (document production only) of Bank of America ("BOA") and Citizens Bank ("Citizens"). (Docket Nos. 29, 30, 43, and 44).

58.     The Defendant and Denise produced some documents and information in response to subpoenas that the Court authorized the United States Trustee to issue.  BOA and Citizens produced documents in response to subpoenas that the Court authorized the United States Trustee to issue.  American Express, Capitol One, and JP Morgan Chase informally produced documents in response to RFPA releases. The Defendant's former business partner, Alexis Tejada ("Alexis"), and the Defendant's friend, Tatiana Andrade ("TA"), informally produced documents.

59.     By order dated October 8, 2020, the Court granted the United States Trustee's assented-to motion to conduct the Defendant's Rule 2004 oral examination (Docket Nos. 54 and 55).  The Defendant testified under oath at his Rule 2004 examination on October 23rd and November 13th 2020.

60.     By order dated February 3, 2021, the Court granted the United States Trustee's motion to compel the Debtor to produce documents and information. (Docket Nos. 64 and 65).  The Debtor produced some supplemental documents (collectively with the foregoing documents referenced in paragraph 58, the "Documents") and an affidavit.

61.     The Defendant's testimony at his Rule 2004 oral examination and in response to the motion to compel, public records available at the Massachusetts Secretary of the Commonwealth Corporations Division ("MSOC") website,[3] the Documents, and the Court's docket establish that:

a.  according to the Defendant, he holds a Master in Business Management degree from the Lebanese American University.  From 2003 to 2011, he was employed as a civilian contractor with the US Department of Defense/US Marine Corp., in Life Support Services, located in Iraq and Afghanistan.  He speaks and/or understands four languages (Arabic, French, English and Russian);

b.  on April 22, 2013, the Defendant formed Soloc, LLC, which he owned and operated until it was involuntarily dissolved by the MSOC on June 30, 2016;

c.  according to the Defendant, he has worked in the livery transportation/driving services business since 2014;

d.  on July 1, 2015, a civil action was filed against the Debtor in connection with his driving services business alleging fraudulent misrepresentation, conversion, and intentional violations of the Massachusetts Consumer and Businessman's Protection Act.  On February 12, 2018, the MA District Court entered judgments against the Debtor on the plaintiffs' claims and awarded treble damages and costs to the plaintiffs.  On August 20, 2018, the District Court issued executions on the money judgments against the Debtor ("State Court Executions").  *See* Adversary Pro. No. 19-1128-JEB (Docket # 1-1, 9-10 of 10);

e.  according to the Defendant, after the dissolution of Soloc LLC, he continued to operate the driving services business doing business as Soloc ("d/b/a Soloc");

f.  according to the Defendant, on October 22, 2018, his accountant, Mr. Roy Dixit, of Shah, of Dixit & Associates, P.C. ("SD&A"), filed with the MSOC articles of organization for Sol Executive Transportation, Inc. ("SOL"), a limousine service, listing Denise's electronic

---

[3]  http://corp.sec.state.ma.us/corpweb/corpsearch/CorpSearch.aspx

signature, and naming Denise as the registered agent, president, treasurer, secretary, and director;

g. according to the Defendant, although outwardly owned by Denise, control of the driving services business changed in name only as he remained fully and actively engaged in the operation and management of SOL;

h. upon information and belief, Denise did not meet or speak with Mr. Roy Dixit about the formation and governance of SOL, or for any other reason;

i. the Defendant produced copies of his joint 2016-2018 Federal and state tax returns and 2018 Federal and state tax returns for SOL;

j. according to the Defendant's joint 2018 Federal tax return, among other things, on Schedule C, the Defendant, a taxi operator, reported gross income of $41,463;

k. upon information and belief, the 2018 Federal and state tax returns were prepared by SD&A and filed on or about June 20, 2019;

l. the Defendant's joint 2018 state tax refund of $1,220 was electronically deposited to Denise's Citizens account ending 545-4 ("Denise's Account") on July 2, 2019;

m. the Defendant's joint 2018 Federal tax refund of $6,308 was electronically deposited to Denise's Account on the Petition Date;

n. according to the Defendant, he withdrew the 2018 Federal tax refund beginning on July 18, 2019;

o. the Defendant produced copies of his joint 2019 Federal and state tax returns;

p. according to the Defendant's joint 2019 Federal tax return, among other things, on Schedule C, the Defendant, a taxi operator, reported gross income of $25,510 and Denise reported wages of $7,267;

q. while operating d/b/a Soloc, the Defendant maintained in his name three different bank accounts at BOA ending 7353, 2411, and 7340 ("Defendant's BOA Accounts");

r. the Defendant's BOA Account ending 2411 reflects payment for a safe box rental on January 29, 2019;

s. the Defendant's BOA Accounts reflect deposits of the Defendant's gross income from the operation of d/b/a Soloc by branch teller, ATM, and merchant servicer transactions (through BKCB Processing, Bankcard, and Global Payments, Inc.);

t. according to the Defendant, he made the deposits, transfers, withdrawals, and purchases, and signed the checks relating to Defendant's BOA Accounts;

u. according to the Defendant, Platinum Motors/Mr. George Haddad received payment from and on behalf of the Defendant for the purchase of a 2017 Chevrolet Suburban ("VIN 126663"), which Defendant caused to be titled/registered in Denise's name on or about May 8, 2018, and used to operate d/b/a Soloc;

v. according to the Defendant, with Denise's consent and participation, in July of 2018, he began transferring his property (income) in cash to Denise by deposits to Denise's Account;

w. according to the Defendant, with Denise's consent and participation, on October 15, 2018, he transferred $25,000 in gross income that he received for a carpentry job from TA to Denise by deposit to Denise's Account;

x. according to the Defendant, with Denise's consent and participation, on November 27, 2018, he transferred $27,341.14 in proceeds from the sale of VIN 126663 to Denise by deposit to Denise's Account;

y. according to the Defendant, with Denise's consent and participation, he made transfers and purchases as well as deposits and withdrawals by branch teller and ATM transactions using a debit/ATM card (ending 5835) relating to Denise's Account;

z. the Defendant's BOA Accounts were closed on March 3, 2019 (7353), March 20, 2019 (2411), and March 7, 2019 (7340);

aa. according to the Defendant, on or about October 23, 2018, with Denise's consent and participation, an account ending 164-7 was opened for SOL at Citizens Bank, with Denise as the signor ("SOL Account");

bb. the SOL Account reflects deposits of gross income from the operation of the driving services business by merchant servicer transactions through Worldpay;

cc. according to the Defendant, with Denise's consent and participation, he made purchases, deposits and withdrawals using a debit/ATM card (ending 3826) relating to the SOL Account;

dd. according to the Defendant, with Denise's consent and participation, he made online transfers from the SOL Account and other transfers in cash to Denise by deposit to Denise's Account;

ee. according to the Defendant, with Denise's consent and participation, he wrote and signed checks from the SOL Account;

ff. according to the Defendant, Denise worked part-time as a makeup artist for CoWorx;

gg. according to the Defendant, Denise was not involved in the daily operations of Soloc LLC, d/b/a Soloc, and SOL;

hh. according to the Defendant, he controlled the management and operations of Soloc LLC, d/b/a Soloc, and SOL (until May, 2019) including with respect to his Uber, Lyft and private client (corporate and individual) relationships, including passengers driven to/from Siemen's Corp., merchant servicer relationships, contract driver relationships including hiring, oversight, scheduling and compensation, and the causing and keeping track of financial transactions including purchases, deposits, transfers, payments, and withdrawals;

ii. according to the Defendant, on November 19, 2018, he caused a $5,000 debit from Denise's Account to Central Buick as a deposit for the purchase of a 2017 Chevrolet Suburban Premier VIN ending 22477 ("VIN 22477"), which the Defendant garages(ed) at his residence, and uses(ed) for the driving services business;

jj. according to the Defendant, he is responsible for all costs relating to VIN 22477 including, but not limited to, maintenance, repairs, insurance coverage, and excise tax, as well as the payment of a loan from Rockland Federal Credit Union, which is owed by his friend, TA, the registered owner of VIN 22477;

kk. according to the Defendant, from January, 2019 to March, 2019, with respect to the carpentry job, he received additional gross income totaling $7,000 from TA, via three charges to TA's BOA credit card accounts ending 7693 and 0803 by SOL;

ll. according to the Defendant, on June 11, 2019, to resolve TA's claim of overcharges with respect to the work performed on the carpentry job, he made payments or transfers totaling $7,000 to TA, via three credits to TA's BOA credit card account ending 9131 from SOL;

mm. according to the Defendant, passengers/clients paid for driving services using credit and debit cards (deposited through the merchant servicer accounts) and in cash, and they further paid tips in cash, but the Defendant neither deposited all cash receipts nor kept or preserved records relating to the cash transactions;

nn. according to the Defendant, in 2018, he marked down cash transactions including whatever expenses he paid with cash and kept a personal book or agenda relating to driver schedules and jobs, which he threw away at the end of the year;

oo. according to the Defendant, in 2019, he maintained no records of cash transactions, he verbally provided SD&A with expense figures for tax purposes, and he kept no personal book or agenda;

pp. according to the Defendant, in 2018 and 2019, he caused charges to Denise's American Express, Capital One, and JP Morgan Chase credit card accounts;

qq. upon information and belief, in 2018, the Debtor made payments on Denise's credit cards from his BOA account ending 2411 and Denise's Account totaling approximately $135,000 (including over $58,000 paid from July 17, 2018 through December 31, 2018);

rr. Upon information and belief, from January 1, 2019 through the Petition Date, the Debtor made payments on Denise's credit cards from Denise's Account totaling approximately $22,000;

ss. according to the Defendant, he first met or spoke with Attorney Piandes about filing for bankruptcy in late 2018;

tt. according to receipts produced by Attorney Piandes, the Defendant paid for bankruptcy services and the Court's filing fee with $500 in cash on May 10, 2019 and $1,875 in cash on June 11, 2019. D.E. #s 1, 39 of 52, and 4;

uu. according to the Defendant, between May 29, 2019 and May 31, 2019, he withdrew $16,100 ($7,000 and $2,500 in cash and $6,600 by check #115) from the SOL Account;

vv. according to the Defendant, he used his laptop computer at home to obtain the certificate of counseling dated June 1, 2019;

ww. according to the Defendant, in 2018, Keiko Kawazoe, who is married to Alexis, began working as a contract driver for d/b/a Soloc and then SOL;

xx. upon information and belief, in 2019, Alexis was employed by Dell Corporation and further began working as a part-time contract driver for SOL;

yy. according to the Defendant, in 2019, he and Alexis became partners in SOL;

zz. according to the Defendant, he and Alexis never committed their oral partnership agreement to writing;

aaa. according to the Defendant, he introduced Alexis to Mr. Roy Dixit at the Burlington, MA office of SD&A, and Mr. Roy Dixit filed with the MSOC a statement of change of supplemental information dated May 2, 2019 for SOL, a limousine service, listing Denise's electronic signature, and naming Denise as president and treasurer and Alexis as secretary and director;

bbb. according to the Defendant, Mr. Roy Dixit filed with the MSOC an annual report dated May 21, 2019 for SOL, a limousine

service, listing Denise's electronic signature, and naming Denise as
president and treasurer, and Alexis as secretary and director;

ccc.       according to the Defendant, Mr. Roy Dixit filed a statement of
change of supplemental information dated May 29, 2019 for SOL, a
limousine service, listing Alexis' electronic signature, and naming
Alexis as president, treasurer, secretary and director;

ddd.       according to the Defendant, he and Alexis went to a BOA
branch office in Westwood, MA to open two bank accounts, ending
7496 and 7658 (the "SOL BOA Accounts"), and a credit card account
ending 1628, with Alexis as the signor;

eee.       according to the Defendant, Alexis provided the Defendant
with login information for the SOL BOA account ending 7658;

fff. according to the Defendant, he accessed the SOL BOA account
ending 7658 using a debit card ending 5216;

ggg.       according to the Defendant, he accessed the SOL credit card
account ending 1628 using a card ending 8578;

hhh.       upon information and belief, on May 31, 2019, June 7, 2019,
and June 11, 2019, Alexis caused three wire deposits totaling $48,000
to the SOL BOA account ending 7658;

iii.   according to the Defendant, he wrote checks, signed by Alexis, from
the SOL BOA account ending 7658 including # 1010 dated June 12,
2019 and # 1011 dated June 20, 2019, made payable to SD&A for
services relating to the preparation of Defendant's joint 2018 Federal
and State tax returns and SOL's 2018 Federal and state tax returns;

jjj. according to the Defendant, in June and July 2019, he accessed the
SOL BOA account ending 7658 with the debit/ATM card ending 5216
and made purchases, debits and withdrawals including, or but not
limited to, for hotel rooms, clothing, restaurants, and to fund the cost
of a family vacation in Florida with Defendant's sister and her family,
who were visiting the USA from Qatar;

kkk.       according to the Defendant, he wrote three checks, signed by
Alexis, from the SOL BOA account ending 7658, # 1014 dated July 5,
2019 (post date July 8, 2019), # 1015 dated July 8, 2019 (post date
July 9, 2019) and # 1020 dated on the Petition Date (post date July 17,
2019), made payable to Saleh Al Youssef for $10,000 (total $30,000),
which he endorsed and cashed for currency;

lll. upon information and belief, the Defendant wrote checks, signed by
Alexis, and made debits and withdrawals from the SOL BOA account
ending 7658 through 2019;

mmm.    upon information and belief, the SOL BOA account ending 7496 reflects deposits of gross income from the operation of the driving services business by merchant servicer transactions through BOA Merchant Services;

nnn.    upon information and belief, the Defendant made online transfers from the SOL BOA account ending 7496 to the SOL BOA account ending 7658;

ooo.    upon information and belief, the Defendant made bank teller withdrawals from the SOL BOA account ending 7496;

ppp.    according to the Defendant, he sold a 2008 Cadillac Escalade, VIN ending 99586, for Alexis;

qqq.    the United States Trustee and/or the Trustee analyzed the statements and check copies for the Defendant's BOA Accounts, Denise's Account, the SOL Account, and the SOL BOA Accounts;

rrr. in the period of July 17, 2018 through December 31, 2018, the Defendant transferred approximately $117,000 of his property (income) in cash to Denise by deposit to Denise's Account;

sss.    in the period of January 1, 2019 through June 30, 2019 ("CMI"), gross receipts from passenger/client credit and debit transactions (received through merchant servicer, Worldpay) and other transfers in cash of approximately $133,000, or $22,000 per month, were deposited to the SOL Account;

ttt. during the CMI period, the Defendant caused online transfers from the SOL Account and other transfers in cash of approximately $78,000, or $13,000 per month, to Denise by deposit to Denise's Account;

uuu.    $30,702 was withdrawn from SOL's BOA account ending 7658 from June 1, 2019 through the Petition Date;

vvv.    $46,348 was withdrawn from Denise's Account from July 17, 2018 through July 22, 2019;

www.    $30,250 was withdrawn from SOL's Account from October 23, 2018 through May 31, 2019;

xxx.    $69,690 was withdrawn from the Defendant's BOA account ending 7340 from May 8, 2018 through November 5, 2018;

yyy.    $26,310 was withdrawn from the Defendant's BOA account ending 7353 from March 21, 2018 through November 15, 2018;

zzz.    $56,605 was withdrawn from the Defendant's BOA account ending 2411 from January 6, 2018 through October 5, 2018;

aaaa.    in total, over $259,000 in cash was withdrawn from SOL's BOA account ending 7658, Denise's Account, SOL's Account, and Defendant's BOA Accounts (cumulatively, the "Accounts") within

eighteen months prior to the Petition Date, on the Petition Date and within days, post-petition;

bbbb.   according to the Defendant, some of the money that he removed or transferred from the Accounts was spent on legitimate expenses for the driving services business or for personal use, however, a vast majority of the money that was removed or transferred by the Defendant remains unaccounted for;

cccc.   the Defendant did not keep or preserve, nor do documents exist, that evidence or reflect how the Defendant spent the money he removed or withdrew from the Accounts;

dddd.   the Defendant could not corroborate his claims that he spent the money on authorized uses with documents;

eeee.   the Defendant could not justify his failure to keep or maintain such recorded information;

ffff.   the Defendant could not satisfactorily explain what he did with the money he transferred, removed or withdrew from the Accounts;

gggg.   according to the Defendant, he met with Attorney Piandes in-person on several occasions including at his law office on the Petition Date (July 17, 2019); and

hhhh.   according to the Defendant, he read his bankruptcy documents, was given the opportunity to ask questions and to make changes to the information contained in his bankruptcy documents, understood that he had signed his bankruptcy documents under the penalty of perjury, and authorized Attorney Piandes to file his bankruptcy documents with the Court.

**C.   The Defendant's transfers of his property in cash to Denise by deposit to Denise's Account in 2018.**

62.   Upon information and belief, in the period of July 17, 2018 to December 31, 2018, the Defendant transferred approximately $117,000 of his property (income) in cash to Denise by deposits to Denise's Account.

63.   At or about the time of his making the foregoing transfers of his property in cash to Denise described in paragraph 62, the Debtor had actual

knowledge of the judgments against him and/or the imminent State Court Executions.

64.    The Defendant, directly or indirectly through Denise, used the property (income) he transferred to Denise for his own purposes and to benefit Denise.

65.    By not reporting on the SOFA the foregoing income and transfers of his property in cash to Denise by deposit to Denise's Account, including from Defendant's undisclosed, closed BOA Accounts, and his use of such income, the Defendant prevented his creditors, the Court, the Trustee, and the UST from understanding the true nature of his financial condition and business transactions.

**D.    Gross receipts deposited to the SOL Account and the Defendant's online transfers from the SOL Account and other transfers in cash to Denise by deposit to Denise's Account during the CMI period.**

66.    Upon information and belief, in the CMI period (January 1, 2019 to June 30, 2019), gross receipts received through Worldpay and other transfers in cash of approximately $133,000, or $22,000 per month, were deposited to the SOL Account. The following figures are approximate aggregate deposits to the SOL Account per month: $16,478 + $36,340 + $16,929 + $24,475 + $39,506 + 0 = $133,724/6=$22,287.

67.    Upon information and belief, in the CMI period, the Defendant transferred gross receipts from the SOL Account and made other transfers in cash

of approximately $78,000, or $13,000 per month, to Denise by deposit to Denise's Account. The following figures are approximate aggregate deposits to Denise's Account per month: $1,517 + $14,565 + $31,270 + $10,490 + $14,400 + $4,298 = $78,601/6= $13,100.

68.     By not reporting on the Form 22 the foregoing gross receipts from the operation of a business or other income and transfers to Denise's Account during the CMI period, the Defendant deprived his creditors, the Court, the Trustee, and the UST of an opportunity to determine whether the presumption of abuse arose.

**E.     The Defendant's unexplained cash transactions within eighteen months prior to and on the Petition Date and shortly thereafter.**

### SOL's BOA Account ending 7658

69.     In the period of June 1, 2019 through June 30, 2019, the Defendant withdrew $700 in cash from SOL's BOA Account ending 7658.

70.     In the period of July 1, 2019 through July 31, 2019, the Defendant withdrew $30,000 in cash from SOL's BOA Account ending 7658.

### Denise's Citizens Account ending 545-4

71.     In the period of July 17, 2018 through August 6, 2018, the Defendant withdrew $7,000 in cash from Denise's Citizens Account ending 545-4.

72.      In the period of August 7, 2018 through September 7, 2018, the Defendant withdrew $3,880 in cash from Denise's Citizens Account ending 545-4.

73.    In the period of September 8, 2018 through October 4, 2018, the Defendant withdrew $1,020 in cash from Denise's Citizens Account ending 545-4.

74.    In the period of October 5, 2018 through November 6, 2018, the Defendant withdrew $6,504 in cash from Denise's Citizens Account ending 545-4.

75.    In the period of November 7, 2018 through December 6, 2018, the Defendant withdrew $2,594 in cash from Denise's Citizens Account ending 545-4.

76.    In the period of December 7, 2018 through January 7, 2019, the Defendant withdrew $3,900 in cash from Denise's Citizens Account ending 545-4.

77.    In the period of January 8, 2019 through February 6, 2019, the Defendant withdrew $6,667 in cash from Denise's Citizens Account ending 545-4.

78.    In the period of February 7, 2019 through March 6, 2019, the Defendant withdrew $3,058 in cash from Denise's Citizens Account ending 545-4.

79.    In the period of March 7, 2019 through April 4, 2019, the Defendant withdrew $1,364 in cash from Denise's Citizens Account ending 545-4.

80.    In the period of April 5, 2019 through May 6, 2019, the Defendant withdrew $2,610 in cash from Denise's Citizens Account ending 545-4.

81.    In the period of May 7, 2019 through June 6, 2019, the Defendant withdrew $1,150 in cash from Denise's Citizens Account ending 545-4.

82.    In the period of June 7, 2019 through July 5, 2019, the Defendant withdrew $600 in cash from Denise's Citizens Account ending 545-4.

83.     In the period of July 6, 2019 through August 6, 2019, the Defendant withdrew $6,000 in cash from Denise's Citizens Account ending 545-4.

## SOL's Citizens Account ending 164-7

84.     In the period of October 23, 2018 through October 31, 2018, the Defendant withdrew $800 in cash from SOL's Citizens Account ending 164-7.

85.     In the period of November 1, 2018 through November 30, 2018, the Defendant withdrew $4,500 in cash from SOL's Citizens Account ending 164-7.

86.     In the period of December 1, 2018 through December 31, 2018, the Defendant withdrew $2,550 in cash from SOL's Citizens Account ending 164-7.

87.     In the period of January 1, 2019 through January 31, 2019, the Defendant withdrew $1,300 in cash from SOL's Citizens Account ending 164-7.

88.     In the period of March 1, 2019 through March 31, 2019, the Defendant withdrew $2,500 in cash from SOL's Citizens Account ending 164-7.

89.     In the period of April 1, 2019 through April 30, 2019, the Defendant withdrew $2,500 in cash from SOL's Citizens Account ending 164-7.

90.     In the period of May 1, 2019 through May 31, 2019, the Defendant withdrew $16,100 in cash from SOL's Citizens Account ending 164-7.

## Defendant's BOA Account ending 7353

91.     In the period of March 21, 2018 through April 16, 2018, the Defendant withdrew $1,082 in cash from his BOA account ending 7353.

92.   In the period of April 17, 2018 through May 16, 2018, the Defendant withdrew $4,480 in cash from his BOA account ending 7353.

93.   In the period of May 17, 2018 through June 17, 2018, the Defendant withdrew $2,830 in cash from his BOA account ending 7353.

94.   In the period of October 18, 2018 through November 15, 2018, the Defendant withdrew $16,400 in cash from his BOA account ending 7353.

<u>Defendant's BOA Account ending 2411</u>

95.   In the period of January 6, 2018 through February 2, 2018, the Defendant withdrew $6,065 in cash from his BOA account ending 2411.

96.   In the period of February 3, 2018 through March 7, 2018, the Defendant withdrew $22,115 in cash from his BOA account ending 2411.

97.   In the period of March 21, 2018 through April 5, 2018, the Defendant withdrew $17,675 in cash from his BOA account ending 2411.

98.   In the period of May 8, 2018 through June 6, 2018, the Defendant withdrew $80 in cash from his BOA account ending 2411.

99.   In the period of June 7, 2018 through July 6, 2018, the Defendant withdrew $2,090 in cash from his BOA account ending 2411.

100.   In the period of July 7, 2018 through August 8, 2018, the Defendant withdrew $7,010 in cash from his BOA account ending 2411.

101.   In the period of September 6, 2018 through October 5, 2018, the Defendant withdrew $1,570 in cash from his BOA account ending 2411.

<u>Defendant's BOA Account ending 7340</u>

102.   In the period of May 8, 2018 through June 6, 2018, the Defendant withdrew $4,980 in cash from his BOA account ending 7340.

103.   In the period of June 7, 2018 through July 6, 2018, the Defendant withdrew $10,905 in cash from his BOA account ending 7340.

104.   In the period of July 7, 2018 through September 5, 2018, the Defendant withdrew $19,515 in cash from his BOA account ending 7340.

105.   In the period of September 6, 2018 through October 5, 2018, the Defendant withdrew a total of $12,810 in cash from his BOA account ending 7340.

106.   In the period of October 6, 2018 through November 5, 2018, the Defendant withdrew a total of $11,150 in cash from his BOA account ending 7340.

107.   The Defendant has not identified records corroborating the use of the cash he removed or withdrew from the Accounts.

108.   The Defendant has not satisfactorily explained, subjectively or objectively, how he spent the money he removed or withdrew from the Accounts.

**F.    <u>The Defendant's intentional concealment and material false oaths or accounts made knowingly and fraudulently or with reckless disregard to the truth.</u>**

109.   The Defendant did not list on the Schedules or SOFA any aspect of the three $10,000 checks (total $30,000) he made payable to Saleh Al Youssef and cashed for currency on July 8, 2019, July 9, 2019, and the Petition Date.

110.   On the Petition Date, the Defendant knew about the three $10,000 checks (total $30,000) he made payable to Saleh Al Youssef and cashed for currency on July 8, 2019, July 9, 2019, and the Petition Date.

111.   On August 13, 2019, the Defendant knew about the three $10,000 checks (total $30,000) he made payable to Saleh Al Youssef and cashed for currency on July 8, 2019, July 9, 2019, and the Petition Date.

112.   The Defendant did not reference on the Schedules any aspect of his joint 2018 Federal tax refund of $6,308.

113.   On the Petition Date, the Defendant knew about his joint 2018 Federal tax refund of $6,308.

114.   On August 13, 2019, the Defendant knew about his joint 2018 Federal tax refund of $6,308.

115.   The Defendant did not list on the Form 22 the existence and transfers of all gross receipts earned from the operation of a business or other income from the SOL Account and other transfers in cash to Denise by deposits to Denise's Account, during the CMI period.  The Defendant further failed to report on the SOFA all gross income deposited to Defendant's BOA Accounts and the

Defendant's transfers of his property in cash to Denise by deposits to Denise's Account in 2018.

116.   On the Petition Date, the Defendant knew about the existence and transfers of gross receipts earned from the operation of a business or other income from the SOL Account and other transfers in cash to Denise by deposits to Denise's Account, during the CMI period.  The Defendant further knew about the gross income deposited to Defendant's BOA Accounts and the Defendant's transfers of his property in cash to Denise by deposits to Denise's Account in 2018.

117.   On August 13, 2019, the Defendant knew about the existence and transfers of gross receipts earned from the operation of a business or other income from the SOL Account and other transfers in cash to Denise by deposits to Denise's Account, during the CMI period.  The Defendant further knew about the gross income deposited to Defendant's BOA Accounts and the Defendant's transfers of his property in cash to Denise by deposits to Denise's Account in 2018.

118.   The Defendant did not reference on the (Petition and/or) SOFA any aspect of his interest in, connections to and control of d/b/a Soloc from 2016 through 2018 and his connections to SOL in 2018 and 2019.

119.   On the Petition Date, the Defendant knew about his interest in, connections to and control of d/b/a Soloc from 2016 through 2018.  The Defendant further knew about his connections to SOL in 2018 and 2019.

120.   On August 13, 2019, the Defendant knew about his interest in, connections to and control of d/b/a Soloc from 2016 through 2018.  The Defendant further knew about his connections to SOL in 2018 and 2019.

121.   The Defendant did not reference on the SOFA that Defendant's BOA Accounts closed in March of 2019.

122.   On the Petition Date, the Defendant knew that Defendant's BOA Accounts closed in March of 2019.

123.   On August 13, 2019, the Defendant knew that Defendant's BOA Accounts closed in March of 2019.

124.   The Defendant did not list on the SOFA his control of VIN 22477, which is registered to TA.

125.   On the Petition Date, the Defendant knew about his control of VIN 22477, which is registered to TA.

126.   On August 13, 2019, the Defendant knew about his control of VIN 22477, which is registered to TA.

127.   The Defendant did not reference on the SOFA the Defendant's gifts or transfers including: i) his purchase of VIN 126663, which he titled/registered in Denise's name, and his deposit of proceeds from the sale of VIN 126663 to Denise's Account; and ii) the money he removed or withdrew from the Accounts, in the two years prior to the Petition Date.

128.   On the Petition Date, the Defendant knew about the gifts or transfers including: i) his purchase of VIN 126663, which he titled/registered in Denise's name and his deposit of proceeds from the sale of VIN 126663 to Denise's Account; and ii) the money he removed or withdrew from the Accounts, in the two years prior to the Petition Date.

129.   On August 13, 2019, the Defendant knew about the gifts or transfers including: i) his purchase of VIN 126663, which he titled/registered in Denise's name and his deposit of proceeds from the sale of VIN 126663 to Denise's Account; and ii) the money he removed or withdrew from the Accounts, in the two years prior to the Petition Date.

130.   The Defendant did not list on the SOFA that he made payments on credit card debts that benefited Denise, an insider, in the one year prior to the Petition Date.

131.   On the Petition Date, the Defendant knew that he made payments on credit card debts that benefited Denise, an insider, in the one year prior to the Petition Date.

132.   On August 13, 2019, the Defendant knew that he made payments on credit card debts that benefited Denise, an insider, in the one year prior to the Petition Date.

133.    The Defendant did not reference on the SOFA the Defendant's payments or transfers to TA of $7,000 on June 11, 2019.

134.    On the Petition Date, the Defendant knew about his payments or transfers to TA of $7,000 on June 11, 2019.

135.    On August 13, 2019, the Defendant knew about his payments or transfers to TA of $7,000 on June 11, 2019.

136.    The Defendant did not list on the SOFA that the Defendant was a party to a legal action relating to the State Court Executions.

137.    On the Petition Date, the Defendant knew about the State Court Executions.

138.    On August 13, 2019, the Defendant knew about the State Court Executions.

139.    The Defendant did not reference on the Schedules or SOFA his interest in Electronics (his lap top computer) and a BOA safe deposit box.

140.    On the Petition Date, the Defendant knew about his interest in Electronics and a BOA safe deposit box.

141.    On August 13, 2019, the Defendant knew about his interest in Electronics and a BOA safe deposit box.

142.    On August 13, 2019, the Defendant knew that his Petition, Schedules, SOFA, and Form 22 were not accurate as filed.  During his testimony at the §

341(a) meeting, the Defendant further knew that all questions on his bankruptcy

documents were not answered truthfully.  The Defendant further knew that he

deceived the Trustee when the Defendant testified that he owned a livery

transportation business but it "fell apart last year." The Defendant further knew

that he deceived the Trustee when the Defendant testified that he had not given

away anything that he owned within the (1) one year before the Petition Date.

## COUNT ONE

## (To Deny the Defendant His Discharge Pursuant to 11 U.S.C. § 727(a)(2))

143.    The Plaintiff re-alleges and incorporates by reference into this Count

all of the preceding paragraphs of this Complaint.

144.    11 U.S.C. § 727(a)(2) provides that the court shall grant a discharge,

unless –

> the debtor, with intent to hinder, delay, or defraud a creditor or an
> officer of the estate charged with custody of property under this title,
> has transferred, removed, destroyed, mutilated, or concealed, or has
> permitted to be transferred, removed, destroyed, mutilated, or
> concealed –
>
> (A)    property of the debtor, within one year before the date of the
> filing of the petition; or
> (B)    property of the estate, after the date of the filing of the petition.

145.    With intent to hinder, delay or defraud, the Defendant transferred,

removed or concealed the three $10,000 checks (total $30,000) he made payable to

Saleh Al Youssef and cashed for currency on July 8, 2019, July 9, 2019 and the

Petition Date, and failed to voluntarily disclose any aspect of the $30,000 in cash

until he was questioned directly by the UST.

146.    With the intent to hinder, delay or defraud, the Defendant transferred,

removed or concealed his joint 2018 Federal tax refund of $6,308, and failed to

voluntarily disclose any aspect of the tax refund until he was questioned directly by

the UST.

147.    With the intent to hinder, delay or defraud, the Defendant concealed

income including: i) all gross receipts from the operation of a business transferred

from the SOL Account or other income and transfers in cash to Denise by deposit

to Denise's Account during the CMI period; and ii) deposits to Defendant's

undisclosed BOA Accounts and transfers of his property in cash to Denise by

deposit to Denise's Account, and failed to voluntarily disclose the income and

transfers to Denise until he was questioned directly by the UST.

148.    Accordingly, the Defendant's discharge should be denied pursuant to

11 U.S.C. § 727(a)(2).

## COUNT TWO

**(To Deny the Defendant His Discharge Pursuant to 11 U.S.C. § 727(a)(3))**

149.    The Plaintiff re-alleges and incorporates by reference into this Count

all of the preceding paragraphs of this Complaint.

150.    The Defendant has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records and papers, from which his financial condition or business transactions might be ascertained.

151.    Specifically, the Defendant has failed to maintain records demonstrating what he did with the proceeds of the three $10,000 checks (total $30,000) he made payable to Saleh Al Youssef and cashed for currency from the SOL BOA account ending 7658 on July 8, 2019, July 9, 2019, and on the Petition Date.

152.    The Defendant has likewise failed to maintain records sufficient to show what happened to his undisclosed joint 2018 Federal tax refund of $6,308, which was deposited to Denise's Account on the Petition Date and withdrawn by the Defendant, post-petition.

153.    The Defendant has likewise failed to maintain records sufficient to account for what he did with all of the money he transferred, removed or withdrew from: i) the SOL Account; ii) Denise's Account; and iii) the Defendant's BOA Accounts, during a time period covered by his SOFA (*e.g.* from January 1, 2018 through the Petition Date).

154.    The Defendant has failed to provide an accurate and complete picture of his financial affairs.  The Defendant has further failed to objectively justify his

failure to maintain records under the circumstances of this bankruptcy case. The

Defendant's failure to maintain these records and provide them in conjunction with

the orders allowing the Rule 2004 examination and the motion to compel is

grounds to deny discharge per Section 727(a)(3).

155.    Accordingly, the Court should deny the Defendant's discharge

pursuant to 11 U.S.C. § 727(a)(3).

## COUNT THREE

## (To Deny the Defendant His Discharge Pursuant to 11 U.S.C. § 727(a)(4)(A))

156.    The Plaintiff re-alleges and incorporates by reference into this Count

all of the preceding paragraphs of this Complaint.

157.    11 U.S.C. § 727(a)(4)(A) provides that the court shall grant a

discharge, unless "the debtor knowingly and fraudulently, in or in connection with

the case – made a false oath or account."

158.    The Defendant declared under penalty of perjury that his Petition,

Schedules, SOFA and Form 22 were true and correct, despite his omission of

disclosure of his interests, assets, income, payments, the State Court Executions,

gifts, transfers, closed accounts, property he controlled for someone else, and

connections to and/or control of d/b/a Soloc and SOL.

159.    The Defendant's declaration constitutes a false oath made knowingly

and fraudulently or with reckless indifference to the truth in the case within the

meaning of 11 U.S.C. § 727(a)(4)(A), and his discharge should therefore be denied.

160.   The Defendant's knowing and fraudulent omission of disclosure in his bankruptcy case of any aspect of the three $10,000 checks (total $30,000) Defendant made payable to Saleh Al Youssef and cashed for currency on July 8, 2019, July 9, 2019, and the Petition Date is a material false oath or account.

161.   The Defendant's knowing and fraudulent omission of disclosure in his bankruptcy case of any aspect of Defendant's joint 2018 Federal tax refund of $6,308 is a material false oath or account.

162.   The Defendant's knowing and fraudulent omission of disclosure in his bankruptcy case of the existence and transfers of all gross receipts earned from the operation of a business or other income from the SOL Account and other transfers in cash to Denise by deposits to Denise's Account during the CMI period is a material false oath or account.

163.   The Defendant's knowing and fraudulent omission of disclosure in his bankruptcy case of all gross income deposited to Defendant's BOA Accounts and Defendant's transfers of his property (income) in cash to Denise by deposits to Denise's Account in 2018 is a material false oath or account.

164.   The Defendant's knowing and fraudulent omission of disclosure in his bankruptcy case of Defendant's interest in, connections to and control of d/b/a

Soloc from 2016 through 2018 and his connections to SOL in 2018 and 2019 is a
material false oath or account.

165.   The Defendant's knowing and fraudulent omission of disclosure in his
bankruptcy case of Defendant's BOA Accounts (closed in March of 2019) is a
material false oath or account.

166.   The Defendant's knowing and fraudulent omission of disclosure in his
bankruptcy case of Defendant's control of VIN 22477, which is registered to TA,
is a material false oath or account.

167.   The Defendant's knowing and fraudulent omission of disclosure in his
bankruptcy case of Defendant's gifts or transfers including: i) his purchase of VIN
126663, which he titled/registered in Denise's name, and his deposit of proceeds
from the sale of VIN 126663 to Denise's Account; and ii) the money he removed
or withdrew from the Accounts, in the two years prior to the Petition Date, is a
material false oath or account.

168.   The Defendant's knowing and fraudulent omission of disclosure in his
bankruptcy case of Defendant's payments on credit card debts that benefited
Denise, an insider, in the one year prior to the Petition Date, is a material false oath
or account.

169.   The Defendant's knowing and fraudulent omission of disclosure in his
bankruptcy case of Defendant's payments or transfers to TA of $7,000 on June 11,

2019 (the same day that he paid Attorney Piandes for bankruptcy services) is a material false oath or account.

170.   The Defendant's knowing and fraudulent omission of disclosure in his bankruptcy case of the State Court Executions is a material false oath or account.

171.   The Defendant's knowing and fraudulent omission of disclosure in his bankruptcy case of Electronics and a safe deposit box are material false oaths or accounts.

172.   In addition, during his testimony at the § 341(a) meeting, the Defendant knowingly and fraudulently or with reckless indifference to the truth made a false oath in or in connection with his bankruptcy case when he testified that his Petition, Schedules, SOFA and Form 22 were accurate as filed.  During his testimony at the § 341(a) meeting, the Defendant knowingly and fraudulently or with reckless indifference to the truth made a false oath when he testified that all questions on his bankruptcy documents were answered truthfully.  The Defendant further knowingly and fraudulently or with reckless indifference to the truth made a false oath when he deceived the Trustee at the August 13, 2019 section 341 meeting by testifying that he owned a livery transportation business but it "fell apart last year" and he had not given away anything that he owned within the (1) one year before the Petition Date.

173.   Accordingly, the Court should deny the Defendant's discharge pursuant to 11 U.S.C. § 727(a)(4)(A).

## COUNT FOUR

### (To Deny the Defendant His Discharge Under 11 U.S.C. § 727(a)(5))

174.   The Plaintiff re-alleges and incorporates by reference into this Count all of the preceding paragraphs of this Complaint.

175.   The Defendant has engaged in substantial financial transactions without any satisfactory explanation as to the ultimate disposition of that cash that could be or could have been used to meet the Defendant's liabilities.

176.   Specifically, the Defendant has failed to provide a satisfactory explanation for his dissipation of the proceeds of the three $10,000 checks (total $30,000) he made payable to Saleh Al Youssef and cashed for currency from the SOL BOA account ending 7658 on July 8, 2019, July 9, 2019, and on the Petition Date.

177.   The Defendant has failed to provide a satisfactory explanation for his dissipation of the undisclosed joint 2018 Federal tax refund of $6,308, which was deposited to Denise's Account on the Petition Date and withdrawn by the Defendant, post-petition.

178.   The Defendant has failed to provide a satisfactory explanation for his dissipation of all of the money he transferred, removed or withdrew from: i) the SOL Account; ii) Denise's Account; and iii) the Defendant's BOA Accounts.

179.   Accordingly, the Court should deny the Defendant's discharge under 11 U.S.C. § 727(a)(5).

## PRAYER

WHEREFORE, the Plaintiff respectfully requests that this Honorable Court enter an Order denying the Defendants' discharge pursuant to 11 U.S.C. § 727(a)(2), (3), (4), and (5) and grant him all such other and further legal and equitable relief which may be just and proper.

Respectfully submitted,

WILLIAM K. HARRINGTON
UNITED STATES TRUSTEE
REGION ONE

By:    */s/ Paula R. C. Bachtell*
Paula R. C. Bachtell BBO# 564155
United States Department of Justice
John W. McCormack Post Office & Courthouse
5 Post Office Square, 10th Floor, Suite 1000
Boston, MA  02109-3934
PHONE:     (617) 788-0406
FAX:          (617) 565-6368
Paula.bachtell@usdoj.gov

Dated:        May 6, 2021

B1040 (FORM 1040) (12/15)

| ADVERSARY PROCEEDING COVER SHEET<br>(Instructions on Reverse) | ADVERSARY PROCEEDING NUMBER<br>(Court Use Only) |
|---|---|

| PLAINTIFFS<br>William K. Harrington, United States Trustee,<br>Region 1 | DEFENDANTS<br>Saleh Al Youssef |
|---|---|
| ATTORNEYS (Firm Name, Address, and Telephone No.)<br>Paula R. C. Bachtell, 5 Post Office Square,<br>Room 1000, Boston, MA  02109<br>(617) 788-0406, (202) 360-0087 | ATTORNEYS<br>James P. Ehrhard, Ehrhard & Assoc. P.C.<br>250 Commercial St., Ste. 410, Worcester, MA  01608<br>(508) 791-8411 |
| PARTY (Check One Box Only)<br>□ Debtor      X U.S. Trustee/Bankruptcy Admin<br>□ Creditor    □ Other<br>□ Trustee | PARTY (Check One Box Only)<br>X Debtor      □ U.S. Trustee/Bankruptcy Admin<br>□ Creditor    □ Other<br>□ Trustee |

CAUSE OF ACTION (WRITE A BRIEF STATEMENT OF CAUSE OF ACTION, INCLUDING ALL U.S. STATUTES INVOLVED) Complaint seeking denial of discharge per 11 U.S.C 727(a)(2)(A)(B), (3), (4)(A), and (5).

## NATURE OF SUIT
(Number up to five (5) boxes starting with lead cause of action as 1, first alternative cause as 2, second alternative cause as 3, etc.)

FRBP 7001(1) – Recovery of Money/Property

☐ 11-Recovery of money/property - §542 turnover of property

☐ 12-Recovery of money/property - §547 preference

☐ 13-Recovery of money/property - §548 fraudulent transfer

☐ 14-Recovery of money/property - other

☐ 21-Validity, priority or extent of lien or other interest in property

7001(2) – Validity, Priority or Extent of Lien

FRBP 7001(3) – Approval of Sale of Property

☐ 31-Approval of sale of property of estate and of a co-owner – §363(h)

X FRBP 7001(4) – Objection/Revocation of Discharge 41-Objection / revocation of discharge – §727(c),(d),(e)

FRBP 7001(5) – Revocation of Confirmation

☐ 51-Revocation of confirmation

FRBP 7001(6) – Dischargeability

FRBP 7001(6) – Dischargeability (continued)

☐ 61-Dischargeability - §523(a)(5), domestic support

☐ 68-Dischargeability - §523(a)(6), willful and malicious injury

☐ 63-Dischargeability - §523(a)(8), student loan

☐ 64-Dischargeability - §523(a)(15), divorce or separation obligation
(other than domestic support)

☐ 65-Dischargeability - other  FRBP

FRBP 7001(7) – Injunctive Relief

☐ ☐ 71-72-Injunctive relief -- imposition of stay Injunctive relief – other

FRBP 7001(8) Subordination of Claim or Interest 81-Subordination of claim or interest

☐ FRBP 7001(91-Declaratory judgment 9) Declaratory Judgment

FRBP 7001(10) Determination of Removed Action

☐ 66-Dischargeability - §523(a)(1),(14),(14A) priority tax claims

☐ 62-Dischargeability - §523(a)(2), false pretenses, false representation,
    actual fraud

☐ 67-Dischargeability - §523(a)(4), fraud as fiduciary, embezzlement, larceny

    (continued next column)

☐ 01-Determination of removed claim or cause

**Other**

☐ SS-SIPA Case – 15 U.S.C. §§78aaa *et.seq.* ☐ 02-Other (e.g. other
    actions that would have been brought in state court

    if unrelated to bankruptcy case)

| | |
|---|---|
| ☐ Check if this case involves a substantive issue of state law | ☐ Check if this is asserted to be a class action under FRCP 23 |
| ☐ Check if a jury trial is demanded in complaint | Demand  $ |
| Other Relief Sought | |

B1040 (FORM 1040) (12/15)

**BANKRUPTCY CASE IN WHICH THIS ADVERSARY PROCEEDING ARISES**

| NAME DEBTOR:<br>Saleh Al Youssef | BANKRUPTCY CASE NO.<br>19-12420-JEB | |
|---|---|---|
| DISTRICT IN WHICH CASE IS PENDING<br>Massachusetts | DIVISION OFFICE<br>Eastern | NAME OF JUDGE<br>Janet E. Bostwick |

**RELATED ADVERSARY PROCEEDING (IF ANY)**

| PLAINTIFF | DEFENDANT | ADVERSARY<br>PROCEEDING NO. |
|---|---|---|
| DISTRICT IN WHICH ADVERSARY IS PENDING | DIVISION OFFICE | NAME OF JUDGE |

| SIGNATURE OF ATTORNEY (OR PLAINTIFF)<br>*Paula RC Bachtell*<br>Paula R. C. Bachtell<br>Office of the United States Trustee<br>5 Post Office Square, Room 1000, Boston, MA 02109 | |
|---|---|
| DATE<br>May 6, 2021 | PRINT NAME OF ATTORNEY (OR PLAINTIFF)<br>Paula R. C. Bachtell |

**INSTRUCTIONS**

The filing of a bankruptcy case creates an "estate" under the jurisdiction of the bankruptcy court which consists of

all of the property of the debtor, wherever that property is located.  Because the bankruptcy estate is so extensive and the jurisdiction of the court so broad, there may be lawsuits over the property or property rights of the estate.  There also may be lawsuits concerning the debtor's discharge.  If such a lawsuit is filed in a bankruptcy court, it is called an adversary proceeding.

A party filing an adversary proceeding must also must complete and file Form 1040, the Adversary Proceeding Cover Sheet, unless the party files the adversary proceeding electronically through the court's Case Management/Electronic Case Filing system (CM/ECF).  (CM/ECF captures the information on Form 1040 as part of the filing process.)  When completed, the cover sheet summarizes basic information on the adversary proceeding.  The clerk of court needs the information to process the adversary proceeding and prepare required statistical reports on court activity.

The cover sheet and the information contained on it do not replace or supplement the filing and service of pleadings or other papers as required by law, the Bankruptcy Rules, or the local rules of court.  The cover sheet, which is largely self explanatory, must be completed by the plaintiff's attorney (or by the plaintiff if the plaintiff is not represented by an attorney).  A separate cover sheet must be submitted to the clerk for each complaint filed.

**Plaintiffs** and **Defendants.**  Give the names of the plaintiffs and defendants exactly as they appear on the complaint.

**Attorneys.**  Give the names and addresses of the attorneys, if known.

**Party**.  Check the most appropriate box in the first column for the plaintiffs and the second column for the defendants.

**Demand.**  Enter the dollar amount being demanded in the complaint.

**Signature.**  This cover sheet must be signed by the attorney of record in the box on the second page of the form.  If the plaintiff is represented by a law firm, a member of the firm must sign.  If the plaintiff is pro se, that is, not represented by an attorney, the plaintiff must sign.